**Naima HOLLOWAY, Plaintiff,**

v.

**HOUSEHOLD AUTOMOTIVE FINANCE CORPORATION, Defendant.**

No. 98 C 3772.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 11, 1998.

Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Tara Leigh Goodwin, Edelman & Combs, Chicago, IL, for Naima Holloway, plaintiff.

Bryan Krakauer, Nancy Anne Temple, Danielle Marie Streber, Sidley & Austin, Chicago, IL, Household Automotive Finance Corp., defendant.

### MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff, Naima Holloway ("Plaintiff"), filed for protection under Chapter 13 of the Bankruptcy Code. Pursuant to the bankruptcy proceedings, Plaintiff and her counsel submitted schedules representing that Defendant, Household Automotive Finance Corporation ("Defendant"), was a secured creditor with a claim of $6,700. Plaintiff filed a plan proposing to repay 100% of all secured and unsecured claims. Shortly thereafter, Defendant received notice of the bankruptcy proceeding, including a plan summary stating that Plaintiff proposed to repay Defendant 100% of its secured claim. Defendant proceeded to file a proof of claim for $6,029.13. Subsequently, Defendant amended its proof of claim to include interest for the post-confirmation time period in which payments were to be made to it under Plaintiff's plan. As a result of the amendment, Defendant claimed $6,902. That amount represented

the account balance; however, the Bankruptcy Code requires that a proof of claim for a secured debt be listed only as to the value of the property that serves as the collateral for the debt. Plaintiff made no objections to Defendant's proof of claim. The Bankruptcy Court confirmed Plaintiff's Chapter 13 plan.

Plaintiff then brought this class action suit against Defendant. Plaintiff alleges that Defendant violated 11 U.S.C. § 105 by interfering with the bankruptcy system (Count I). Plaintiff also maintains that Defendant violated the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 *et seq.* ("CFA") by filing inflated, deceptive, and unfair proofs of claim that resulted in pecuniary injury (Count II).

Defendant's motion to dismiss the complaint in its entirety is before this Court. Defendant asserts that there is no private right of action under § 105 of the Bankruptcy Code. Defendant also argues that Plaintiff is attempting to imply a private right of action under 11 U.S.C. § 502 and that, as with § 105, no private right of action exists. Moreover, Defendant contends that Plaintiff's claims have already been adjudicated in the underlying bankruptcy proceeding and, thus, are barred by *res judicata.* Finally, Defendant claims that Plaintiff failed to state a claim under the CFA, and, in any event, the state law claim is preempted by the Bankruptcy Code.

## RELEVANT FACTS

Plaintiff filed a petition for bankruptcy under Chapter 13 of the Bankruptcy Code. (Def.Mot. at Ex. 2.) Attorney Robert J. Adams executed a voluntary petition for Plaintiff and represented that he had advised her of the provisions for relief under Chapter 13. (Def.Mot. at Ex. 1.) Pursuant to the Bankruptcy Code, Plaintiff and her counsel submitted schedules listing Defendant as a secured creditor that was owed $6,700 for the purchase of a 1991 Chevy Lumina. (Def.Mot. at Ex. 2, Schedule D.) The car itself served as collateral for the original purchase contract, and the schedule reflected Plaintiff's position that the market value of the collateral was $2,500. *Id.*

On the same day that she filed for bankruptcy protection, Plaintiff submitted a Chapter 13 plan where she proposed to repay 100% of all secured and unsecured claims. (Def.Mot. at Ex. 3.) In response to that plan, the Clerk of the Bankruptcy Court mailed out a "Notice of Commencement of Case Under Chapter 13 of the Bankruptcy Code, Meeting of Creditors, and Fixing of Dates" to Plaintiff and her attorney, the Chapter 13 Trustee, and the creditors identified in Plaintiff's schedules, including Defendant. (Def.Mot. at Ex. 4.) The notice of bankruptcy included a plan summary based on Plaintiff's schedules and plan. The summary sent to Defendant stated that Plaintiff intended to repay 100% of all secured and unsecured claims. *Id.*

Having received the notice of bankruptcy and the summary plan, Defendant filed a proof of claim for $6,029.13. (Def.Mot. at Ex. 5). Originally, Defendant's claim was approximately $700 less than the claim Plaintiff listed in her schedules. However, Defendant subsequently submitted an amended proof of claim that included interest for the post-confirmation time period, resulting in a claim for $6,901.92. (Def.Mot. at Ex. 6.)

Along with its proof of claim, Defendant submitted evidence as to the value of Defendant's security interest, which included a 1998 Kelly Blue Book excerpt that suggested a retail price of $6,125 for a 1991 Chevy Lumina. (Def.Mot. at Ex. 5). Although Plaintiff listed the current market value of the Lumina as $2,500 in her petition, she never objected to Defendant's proof of claim. The Bankruptcy Court confirmed Plaintiff's Chapter 13 Plan, which provided for full payment of all secured claims. (Def.Mot. at Ex. 8).

Plaintiff now alleges that Defendant listed the account balance as the value of the collateral in its proof of claim. The account balance refers to the "total of payments on the retail installment contract minus payments made and minus a finance charge rebate." (Compl. at ¶ 10.) Plaintiff contends that valuing the collateral by the account balance is an improper method of valuation under the Bankruptcy Code. *Id.* Rather, a creditor can list a secured claim only up to the actual

value of the collateral. (Compl. at ¶ 11.) Plaintiff argues that the value of the vehicle, according to the February 1998 National Automobile Dealers Association survey, is $2,500. (Compl. at ¶ 12.) Indeed, even in the original bankruptcy proceedings Plaintiff claimed that the market value of the Lumina was $2,500. (Def.Mot. at Ex. 2, Schedule B, D.)

Plaintiff originally filed this action as an adversary complaint before the bankruptcy court. (Compl. at ¶ 2.) However, the bankruptcy court dismissed the complaint after concluding that it lacked the jurisdiction to hear class actions. (Pl.Resp. at Ex. A, 13–15.)

Plaintiff re-filed her complaint with this Court. She alleges that Defendant filed inflated proofs of claim, which intentionally misrepresented the value of its collateral and thereby interfered with the bankruptcy system in violation of 11 U.S.C. § 105. (Compl. at ¶¶ 23–25.) Plaintiff also contends that when Defendant allegedly filed the inflated proofs of claim, it engaged in unfair and deceptive conduct in violation of the CFA. (Compl. at ¶¶ 26–32.)

## ANALYSIS

### 1. Standard of Review

Dismissal is proper only if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations' " in the complaint. *Cushing v. City of Chicago,* 3 F.3d 1156, 1159 (7th Cir. 1993), *quoting Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). In deciding whether to grant a motion to dismiss, a court must consider the factual allegations in the pleading to be true and draw all reasonable inferences in favor of the non-moving party. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1428 (7th Cir.1996).

### 2. The Alleged Violation of 11 U.S.C. § 105

█ Plaintiff asserts that Defendant intentionally interfered with the bankruptcy system in violation of 11 U.S.C. § 105. Defendant's motion to dismiss assumes that

Plaintiff also claims a violation of 11 U.S.C. § 502, although the complaint does not specifically invoke that statute. Defendant strongly argues that there is no private right of action under either section, whereas Plaintiff alleges that no private right of action is needed because § 105 allegedly specifies the relief that Plaintiff is requesting. Having reviewed the applicable authorities, this Court holds that no private remedy exists under §§ 105 or 502.

Section 105(a) provides that a court

may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

On its face, § 105(a) does not expressly provide for a private right of action that would allow a Plaintiff to bring an adversary action to recover for a defendant's allegedly fraudulent proofs of claim. Section 105 does permit courts to impose contempt sanctions in certain circumstances. *In re Hardy,* 97 F.3d 1384, 1389–90 (11th Cir.1996) (holding that "Section 105 grants statutory contempt powers in the bankruptcy context" that may be used to award "monetary and other forms of relief for automatic stay violations"); *In re Latanowich,* 207 B.R. 326, 333 (Bankr. D.Mass.1997) (using § 105(a) to hold the defendant in contempt to enforce the court's discharge of a debt where the defendant had deliberately attempted to prevail on the Debtor to reaffirm a debt in disregard of the discharge). Section 105 also enables courts to issue orders necessary to protect estate property subject to bankruptcy proceedings. *See, e.g., Green v. Drexler,* 760 F.2d 406, 411, 414–15 (2d Cir.1985) (holding that a court had the power, pursuant to § 105(a), to compel a defendant to deliver her property, which was the subject of a bankruptcy proceeding, from outside the court's territorial jurisdiction); *Air Line Pilots Assn. Intl. v. American Natl. Bank and Trust Co. of Chicago,* 156 B.R. 414, 436 (S.D.N.Y.1993) (uti-

lizing § 105(a) to enjoin claimants from asserting claims that were the property of an estate in a bankruptcy proceeding); *In re Lykes Bros. S.S. Co., Inc.*, 191 B.R. 935, 936 (Bankr.M.D.Fla.1995) (holding that it was appropriate to allow stay relief, pursuant to § 105, in order to protect the property of the estate.)

In this instance, Plaintiff is neither asking for contempt sanctions (since Defendant has not violated either a court stay or an injunction) nor requesting that the Court protect the property of a bankrupt estate. Plaintiff is instead asserting an affirmative cause of action for damages to remedy Defendant's allegedly fraudulent, inflated proofs of claim in the bankruptcy proceeding, which has now concluded. Plaintiff cannot rely on the cases cited above to assert a claim because these cases do not authorize affirmative damage remedies.

■ Because § 105(a) does not authorize a private right of action on its face, there is no basis for Plaintiff's claims in Count I unless she can demonstrate that Congress intended to create an implied private right of action. *See Allison v. Liberty Sav.*, 695 F.2d 1086, 1088 (7th Cir.1982). The United States Supreme Court has "set forth a four part test for determining the propriety of implying a private cause of action." *Id.* at 1088. There are four factors to consider:

> (1) whether plaintiff is a member of a class for whose especial benefit the statute was enacted; (2) whether there is any explicit or implicit indication of congressional intent to create or deny a private remedy; (3) whether a private remedy would be consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law.

*Id., citing Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The Supreme Court has "since explained and clarified the test's application. All four factors are not to be equally weighted." *Allison*, 695 F.2d at 1088, *citing Touche Ross & Co. v. Redington*, 442 U.S. 560, 575, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). The central inquiry is whether Congress intended to create a private right of action. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15–16, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) ("[W]hat must ultimately be determined is whether Congress intended to create the private remedy asserted."); *Redington*, 442 U.S. at 575, 99 S.Ct. 2479 ("[T]he central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action."); *Allison*, 695 F.2d at 1088.

■ An examination of § 105(a) and related provisions demonstrates that Congress lacked the requisite intent necessary to imply a private right of action. In contrast to § 105(a), other sections of the Bankruptcy Code *do* provide a private right of action. For example, § 362(h) expressly provides a private right of action for violations of an automatic stay. Congress created a private right of action under § 362(h) in 1984 as part of other sweeping amendments to the Bankruptcy Code, *see* Pub.L. No. 98–353, § 304, 98 Stat. 352 (1984), but enacted no similar amendments to § 105(a). *See Cox v. Zale Del., Inc.*, 1998 WL 397841, at *2 (N.D.Ill. July 13, 1998) (Castillo, J.) (outlining the history of § 362(h) and holding that no similar amendments were added to 11 U.S.C. § 524 to provide a private remedy). In *Cox*, we noted that Judge Zagel, in *Perovich v. Humphrey*, 1997 WL 674975 (N.D.Ill. Oct. 28, 1997), concluded that such an "omission does not seem accidental where Congress did expressly provide similar remedies in other sections." *Cox*, 1998 WL 397841, at *3, *citing Perovich*, 1997 WL 674975, at *3. Having noted that Congress specifically provided for private rights of action in other sections of the Bankruptcy Code, the *Perovich* court held that there is presently "no authority" to indicate that a plaintiff is entitled to a private right of action for damages under § 524. *Perovich*, 1997 WL 674975, at *4. *See also In re Costa*, 172 B.R. 954, 966 (Bankr. E.D.Cal.1994) (holding that, because "before the enactment of § 362(h), ... courts generally declined to imply a damages cause of action" and "Congress responded by creating a compensatory and punitive remedy" via § 362(h), it follows that legislation similar to § 362(h) "would be necessary to create a private cause of action [under § 524].").

Thus, this Court in *Cox* held that the specific private of right action provided in § 362(h) "cast serious doubt upon plaintiff's ability" to show that Congress meant to imply a private right of action under § 524. *Cox*, 1998 WL 397841, at *2.

In this case, implying a private right of action to remedy the submission of fraudulent proofs of claim would be inconsistent with the underlying legislative scheme because Congress has already provided an express remedy for such abuses. *See generally Costa*, 172 B.R. at 966 (finding a private right of action inconsistent with legislative intent where an implied action is "inconsistent with the underlying legislative scheme"). Section 1330(a) of the Bankruptcy Code specifically provides that a bankruptcy court may revoke a confirmation order where it has been procured by fraud. *In re Chappell*, 984 F.2d 775, 783 (7th Cir.1993) (holding that under § 1330(a), "a bankruptcy court may revoke a Chapter 13 . . . confirmation order if the . . . confirmation was procured by fraud"); *In re Pence*, 905 F.2d 1107, 1110 (7th Cir.1990) (same).

Plaintiff alleges that Defendant's conduct violates § 105 because the submission of fraudulent proofs of claim represents a "calculated interference with the bankruptcy system." (Complt. at ¶ 24.) Plaintiff argues that Defendant has no "right to file patently fraudulent claims and inflict injury on hundreds of debtors with impunity" and that this Court should invoke its authority under § 105 to "remedy the situation." (Pl.Resp. at 4). However, under § 1330, a court has the ability to set aside a confirmation order where a party, within 180 days of the entry of the confirmation order, alleges that the order was procured by fraud. Section 1330, on its face, provides the necessary remedy for fraudulent proofs of claim. It would be "inconsistent with the underlying legislative scheme," *Cox*, 1998 WL 397841, at *3, to allow a party to bring a private right of action to remedy fraudulent proofs of claim where Congress has already provided the necessary remedy in § 1330(a).

Most courts that have addressed the issue agree that § 105 does not provide a private right of action. In *Simmons v. Ford Motor Credit Co.*, 224 B.R. 879 (Bankr.N.D.Ill.1998) (Lefkow, J.), the bankruptcy court held that § 105 "is not without limits." *Id.* at 884. The court explained that

> Section 105(a) simply authorizes a bankruptcy court to fashion such orders as are necessary to further the purposes of the substantive provisions of the Bankruptcy Code . . . [sic] Thus it authorizes . . . courts to issue injunctions and take necessary steps in aid of their jurisdiction.
>
> While the . . . courts have fashioned relief under Section 105(a) in a variety of situations, the powers granted by the statute may be exercised only in a manner consistent with the provisions of the Bankruptcy Code. That statute does not authorize the . . . courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.

*Id., quoting United States v. Sutton*, 786 F.2d 1305, 1307 (5th Cir.1986). The bankruptcy court in *Costa* also rejected the suggestion that "the catch-all of 11 U.S.C. § 105(a) could be used to justify a private right of action." *Costa*, 172 B.R. at 965. The *Costa* court held that to employ § 105(a) to imply private rights of action would require a "too great a leap," and explained that "[i]t is one thing for section 105 to serve as a statutory basis for contempt, it is another matter to use it to sanction an implied right of action distinct from contempt." *Id.*

In sum, this Court concludes that § 105 does not support Plaintiff's lawsuit against Defendant because it does not authorize a private right of action. When Congress wishes to provide a private damage remedy, it knows how to do so. *See Redington*, 442 U.S. at 572, 99 S.Ct. 2479; *Allison*, 695 F.2d at 1088. In the Bankruptcy Code, Congress has created a number of express private rights of action, such as § 362(h). We find that the omission of a similar private remedy under § 105(a) indicates a lack of legislative intent to create a private right of action. Moreover, to imply a private right of action under § 105(a) would undermine and be inconsistent with the underlying legislative scheme imposed by the Bankruptcy Code. Congress specifically enacted § 1330(a) to

remedy confirmation orders procured by fraud, and implying a private remedy for fraud would be inconsistent with this purpose. For these reasons we conclude that Congress never intended § 105(a) to serve as a private remedy against fraudulent proofs of claim and that Plaintiff is not entitled to any remedy under that provision.

Although Plaintiff's complaint alleges only that Defendant's conduct violated § 105, (Complt. at ¶¶ 24, 25), Defendant asserts that Plaintiff may also be attempting to allege a private right of action under 11 U.S.C. § 502. (Def.Mot. at 6.) Plaintiff, however, has made no claim pursuant to § 502 nor does she refer to any private right of action under § 502 in her Response to Defendant's Motion to Dismiss. Plaintiff notes that "[§] 105 specifies the relief that can be awarded in a bankruptcy case." (Pl.Resp. at 3.) Moreover, Plaintiff concludes her memorandum by specifically stating that "this Court can enforce a plaintiff's rights pursuant to § 105." *Id.* at 7. We conclude, therefore, that Plaintiff has made no claim pursuant to § 502. Even if Plaintiff articulated such a claim, § 502 provides no private right of action on its face and, for the same reasons applicable to § 105, Congress has demonstrated no intent to create an implied private right of action under § 502. As with § 105, Congress did not express the same clear private remedy in § 502 that it provided in § 362(h). Moreover, employing § 502 to remedy fraudulent proofs of claim would be just as inconsistent with § 1330(a) as invoking § 105 to remedy such fraud. We find that Plaintiff has no available remedy against Defendant either under § 105 or § 502.[1]

### 3. The Alleged Violation of the CFA

Count II of Plaintiff's complaint asserts that Defendant violated the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 *et seq.* ("CFA"). (Compl. at ¶ 27.) In its motion to dismiss, Defendant contends that the Bankruptcy Code preempts Plaintiff's state law fraud theories and should thus be dismissed. (Def.Mot. at 12.) We agree.

In *Cox,* we held that the expansive reach of the Code preempts virtually all claims relating to alleged misconduct in the bankruptcy courts. *Cox,* 1998 WL 397841, at *5. In reaching that conclusion we relied on *MSR Exploration, Ltd. v. Meridian Oil, Inc.,* 74 F.3d 910, 912–15 (9th Cir.1996). As the Ninth Circuit aptly observed

a mere browse through the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code ... demonstrates Congress's intent to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike. While it is true that bankruptcy law makes reference to state law at many points, the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal.

*Id.* at 913.

In *Cox,* we also agreed with the reasoning of *In re Shape, Inc.,* 135 B.R. 707, 708 (Bankr.D.Me.1992) where the court held that a state unfair and deceptive business practice claim was preempted because it was based solely on alleged violations of the automatic stay provisions of the Bankruptcy Code. Essentially, the purported state cause of action relied "on the Bankruptcy Code in order to obtain a state law remedy," and was "intimately tied to the existence of Shape's bankruptcy." *In re Shape,* 135 B.R. at 708–709. The court held that the Bankruptcy Code "provides a comprehensive scheme reflecting a 'balance, completeness and structural integrity that suggests remedial exclusivity.'" *Id.* at 708, *quoting Periera v. Chapman,* 92 B.R. 903, 908 (C.D.Cal.1988). The *Shape* court concluded that where a federal statute was applicable, and had its own enforcement scheme and separate adjudicative framework, "it must supercede any state law remedies." *Id.*

As in *Shape,* Plaintiff's claims in this case depend solely upon, and thus are intricately related to, alleged violations of the Bankruptcy Code. Plaintiff claims that De-

---

1. Because of our holding, we see no need to address Defendant's assertion that the bankruptcy court's confirmation order is entitled to *res judicata* effect.

fendant committed fraud in violation of the CFA by intentionally and deliberately valuing its secured claim by fraudulent means in violation of 11 U.S.C. § 506(a), (d).[2] Without the requirement that defendant submit proofs of claim under the Bankruptcy Code, and the Code's codification of a permissible method by which to value secured claims, Plaintiff would have no grounds on which to bring an action for fraud under the CFA. Thus Plaintiff's CFA claim is wholly dependent upon the Bankruptcy Code.

Moreover, the Code provides both "its own enforcement scheme and separate adjudicative framework." *Shape*, 135 B.R. at 708. Section 502(a) provides that a party can object to proofs of claim in a bankruptcy proceeding. Even if such an objection is not made, and a confirmation order is entered, § 1330(a) provides that a Chapter 13 confirmation order may be revoked if procured by fraud, so long as such an allegation is filed within 180 days of the confirmation order's entry. As such, the Bankruptcy Code contemplates and provides for a comprehensive scheme by which to guard against fraud and remedy it.

The Code provides "complex, detailed, and comprehensive" provisions, especially as to proofs of claim and fraud. Under both the reasoning of *MSR Exploration* and *Shape*, and because the Code has sections applicable to adjudicate the value of secured claims and provides remedies for fraud, we hold that Plaintiff's state law CFA claim is preempted by the Bankruptcy Code.[3]

---

**2.** The proper measure of a "secured claim" in a proof of claim will be the actual value of the collateral. *In re Bank One, Chicago v. Flowers*, 183 B.R. 509, 514–15, 517 (N.D.Ill.1995). 11 U.S.C. § 506(a) provides that an "allowed claim of a creditor secured by a lien or property is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property." As such, § 506 allows secured claims only "to the extent of the value of the collateral." *Flowers*, 183 B.R. at 514–15. In turn, 11 U.S.C. § 506(d) provides that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such [a] lien is void." Plaintiff is essentially alleging that Defendant's valuation method was improper under § 506.

**3.** Even if Plaintiff's state law claim was not preempted, this Court would have no jurisdiction

## CONCLUSION

After a careful review of the allegations in Plaintiff's amended complaint and in light of the issues raised by Defendant's motion to dismiss, the Court concludes that Defendant's motion should be granted.

Turning our attention to Plaintiff's pending motion for class certification, we hereby deny said motion. For all the reasons contained herein, we easily conclude that this Plaintiff is not an appropriate class representative.

Consistent with this order, Counts I and II of Plaintiff's complaint are dismissed with prejudice. The Clerk of the Court is directed to enter judgment in favor of Defendant, pursuant to Fed.R.Civ.P. 58, against Plaintiff.

---

over it. We note that Plaintiff's complaint was not brought as a diversity action under 28 U.S.C. § 1332. If Plaintiff were entitled to a private right of action under the Bankruptcy Code, this Court would have had jurisdiction over such a claim, and in turn had supplemental jurisdiction over Plaintiff's CFA claim pursuant to 28 U.S.C. § 1367(a). However, she enjoys no private right of action under the Code. Lacking original jurisdiction, this Court would be unable to invoke any supplemental jurisdiction over Plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) (permitting a district court to decline to exercise supplemental jurisdiction over a claim where the court has dismissed all claims over which it had original jurisdiction).