Donna M. WALLS, Plaintiff,

v.

**WELLS FARGO BANK,
N.A., Defendant.**

No. Civ. S–99–1860 FCD/DAD.

United States District Court,
E.D. California.

Oct. 16, 2000.

William S. Weisberg, Craig S. Miller, Weisberg & Miller, Sacramento, CA, Ronald S. Goldser, Zimmerman Reed P.L.L.P., Minneapolis, MN, Carleton B. Crutchfield,

Mitsch & Crutchfield, St. Paul, Minnesota, for plaintiff.

Thomas O. Jacob, Office of General Counsel, Wells Fargo Bank, National Association, San Francisco, CA, Mark D. Lonergan, Rhonda L. Nelson, Severson & Werson, A Professional Corporation, San Francisco, CA, for defendant.

## *MEMORANDUM AND ORDER*

DAMRELL, District Judge.

This matter is before the court on (1) defendant Wells Fargo Bank's motion to dismiss eight of the ten causes of action alleged in plaintiff's complaint for failure to state a claim, and (2) plaintiff Donna M. Wall's motion to refer the core bankruptcy issues contained in complaint to the United States Bankruptcy Court for the Eastern District of California and to stay the remaining issues in this court pending a decision by the bankruptcy court on the referred claims.

## BACKGROUND

On September 24, 1997, plaintiff Donna Walls filed a voluntary bankruptcy petition under Chapter 7 of Title 11 of the United States Code. In her petition, plaintiff listed a pre-petition obligation of $118,000 ("the debt") to defendant Wells Fargo Bank. Plaintiff's bankruptcy was discharged on January 2, 1998 and closed on January 26, 1998.

Plaintiff contends that defendant unlawfully attempted to collect the debt *after* she filed her Chapter 7 petition in violation of the automatic stay, 11 U.S.C. § 362, and *after* the debt had been discharged, in violation of the reaffirmation provisions and discharge injunction, 11 U.S.C. § 524(c), (a)(2). Plaintiff alleges that pursuant to defendant's unlawful collection efforts, she paid over $5,500 to defendant after she filed her bankruptcy petition and after her debt had been discharged.

Plaintiff's complaint consists of ten counts:

Count 1: wilful violation of the reaffirmation provisions of 11 U.S.C. § 524(c)

Count 2: wilful violation of the automatic stay, 11 U.S.C. § 362

Count 3: wilful violation of the discharge injunction, 11 U.S.C. § 524(a)(2)

Count 4: contempt of court based upon defendant's alleged violation of 11 U.S.C. §§ 362 and 524(a)(2)

Count 5: violation of RICO, 18 U.S.C. § 1962(c)

Count 6: violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692f

Count 7: declaratory relief

Count 8: injunctive relief

Count 9: accounting

Count 10: attorney's fees pursuant to 11 U.S.C. §§ 105, 362(h), 15 U.S.C. § 1692k, and 18 U.S.C.1964(c)

Plaintiff brings this putative class action on behalf of herself and others similarly situated.

Defendant moves to dismiss the first and third causes of action on the ground that there is no private right of action under section 524,[1] the fifth cause of action on the ground that plaintiff failed to plead an "enterprise" as required to state a claim under RICO, the sixth cause of action on the ground that the FDCPA does not apply to creditors collecting their own debts, the fifth and sixth causes of action on the ground that to the extent they are premised on violations of sections 362 and 524, the exclusive remedies are found in the Bankruptcy Code, and the seventh through tenth causes of action on the ground that they are preempted by the Bankruptcy Code to the extent they are based on violations of the same. Plaintiff moves to refer all core bankruptcy issues to the bankruptcy court and to stay the proceedings in this court, including defendant's motion to dismiss, pending resolution of the referred claims.

A hearing was held on August 4, 2000. At the hearing, the court ordered the parties to submit supplemental briefing on certain issues. The court has reviewed the parties' supplemental briefs and disposes of the matter herein.

---

1. Unless otherwise noted, all statutory references herein are to Title 11 of the United States Code.

## STANDARD

### 1. Motion To Refer

This court has "original but not exclusive jurisdiction over all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). This court, however, may refer to the bankruptcy court any cases arising under that title as well as related proceedings. *See* 28 U.S.C. § 157(a); E.D. Gen. Ord. No. 182.

### 2. Motion To Dismiss

A complaint will not be dismissed under Fed.R.Civ.P. 12(b)(6) "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his [or her] claim that would entitle him [or her] to relief." *Yamaguchi v. Department of the Air Force,* 109 F.3d 1475, 1480 (9th Cir.1997) (quoting *Lewis v. Telephone Employees Credit Union,* 87 F.3d 1537, 1545 (9th Cir. 1996)). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir.1996).

## ANALYSIS

### 1. MOTION TO REFER

■ Plaintiff requests the court refer the following issues to the bankruptcy court:

(1) whether defendant's collection activities violated the automatic stay under section 362, and the appropriate remedy for such violation;

(2) whether defendant's collection activities violated section 524(a)(2) and the related bankruptcy discharge, and plaintiff's rights arising from and the appropriate remedy for such violation;

(3) whether defendant's failure to take reasonable steps to reaffirm the pre-petition debt constituted a deliberate circumvention and violation of sections 524(c), and plaintiff's rights arising from

and the appropriate remedy for such violations;

(4) whether defendant's actions constitute civil contempt of court for violations of the automatic stay under section 362 and the related bankruptcy discharge under section 524(a), and plaintiff's rights arising from and the appropriate remedy for such violations;

(5) whether defendant violated any other provisions of the Code, and if so, what are plaintiff's rights arising from and appropriate remedy for any such violation; and

(6) whether defendant is liable to plaintiff for any damages, sanctions, and costs associated with violations of the Code and the amount of such liability.

Defendant does not oppose the referral of matters under Title 11 to the bankruptcy court; rather, defendant contends that referral is premature at this time. Defendant contends that referring the above-mentioned issues to the bankruptcy court prior to ruling on defendant's motion to dismiss may violate defendant's Seventh Amendment right to a jury trial. The court agrees.

■ The Seventh Amendment guarantees defendants the right to have a jury determine issues of fact. As discussed in detail below, plaintiff's equitable and legal claims raise common issues of fact. For example, as plead in the complaint, plaintiff's RICO and FDCPA claims are premised solely upon violations of the Bankruptcy Code. Thus, if the court refers the equitable claims to the bankruptcy court and stays all proceedings on plaintiff's legal claims, the bankruptcy judge will decide the common factual issues first, before they can be submitted to a jury. Under the doctrine of collateral estoppel, these factual determinations could become binding in later proceedings on the legal claims in this court. *See Beacon Theatres v. Westover,* 359 U.S. 500, 504–11, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); *see also Peterson v. Wells Fargo Bank, N.A.,* 2000 WL 1225788 *1–4 (E.D.Cal. Aug.17, 2000).

The court also finds that ruling on defendant's motion to dismiss at this time promotes the goal of judicial efficiency. As the court stated in *Molloy v. Primus Automotive:*

> If the bankruptcy court were to decide this issue, the 'losing' party would presumably appeal that decision to this Court. Thus, one way or another, this Court must decide whether § 524 contains an implied right of action. To avoid duplicative litigation in the Bankruptcy Court, this Court's determination of this issue will control this litigation.

247 B.R. 804, 815 (C.D.Cal.2000).

Accordingly, this court will exercise its discretion and will not refer the core claims to the bankruptcy court prior to ruling on defendant's motion to dismiss.[2]

## 2. MOTION TO DISMISS

 The automatic stay is effective upon the filing of the bankruptcy petition. *In re Pettit,* 217 F.3d 1072, 1077 (9th Cir. 2000). It is self-executing and enjoins "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case." *Id.* (quoting 11 U.S.C. § 362(a)(6)). The automatic stay dissolves on the discharge date. *In re Mayton,* 208 B.R. 61, 66 (9th Cir. BAP 1997).

A discharge of bankruptcy "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a *personal liability* of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2) (emphasis added).

After filing a Chapter 7 petition, a debtor, such as plaintiff, who has consumer debts secured by property of the estate must file a statement of her intention to retain or surrender the property with the clerk, and, "if applicable," specify that she claims the property as exempt, plans to redeem the property, or intends to reaffirm the debt. *See* 11 U.S.C. § 521(2)(A). The debtor has forty-five days in which to perform her expressed intention. *Id.* § 521(2)(B).

 Reaffirmation and redemption, however, are not the debtor's only alternatives. In the Ninth Circuit, debtors who are current on their loan payments on secured property may elect to hold on to the collateral securing the loan and continue making payments, without electing whether to redeem the property or reaffirm the debt. *See In re Parker,* 139 F.3d 668, 673 (9th Cir.), *cert. denied, McClellan Fed. Credit Union v. Parker,* 525 U.S. 1041, 119 S.Ct. 592, 142 L.Ed.2d 535 (1998). Here, it appears that plaintiff chose the last option, electing to hold on to her home and to continue to make payments. While it is clear that a debtor, having so elected, is no longer personally liable for the debt, the creditor retains a lien on the property and may foreclose in the event the debtor does not continue to make payments. *See In re Mayton,* 208 B.R. at 66. The parties dispute what, if any, additional actions or measures may be pursued by a creditor where a debtor elects to hold on to the collateral but ceases to make payments.

### A. Wilful Violations of Section 524 (Counts 1 & 3)

 Plaintiff seeks money damages for defendant's alleged violations of section 524. Plaintiff contends that defendant violated section 524(a)(2) by attempting to collect the debt following its discharge and section 524(c) by failing to secure and file a reaffirmation agreement before attempting to collect the debt following its discharge. Defendant moves to dismiss these claims

---

**2.** The court notes that the issues presented in defendant's motion to dismiss—whether Congress intended to infer a private right of action in a statute, federal preemption, and potential conflicts between federal statutes—are not unique to bankruptcy, and are issues with which district courts have considerable experience.

on the ground that no private right of action exists under section 524.

Neither the Supreme Court nor any circuit court has addressed this issue. A number of courts have, and the overwhelming majority hold that there is no private right of action under section 524. *See Peterson,* 2000 WL 1225788 at *1; *Transamerica Fin. Svs. v. Danney,* 1999 WL 33117201 (D.Me., Dec. 23, 1999); *Cox v. Zale Del., Inc.,* 242 B.R. 444 (N.D.Ill. 1999); *Bessette v. AVCO Fin. Svs., Inc.,* 240 B.R. 147 (D.R.I.1999); *Holloway v. Household Automotive Fin. Corp.,* 227 B.R. 501 (N.D.Ill.1998); *Pereira v. First N. Am. Nat. Bank,* 223 B.R. 28 (N.D.Ga. 1998); *Perovich v. Humphrey,* 1997 WL 674975 (N.D.Ill., Oct. 28, 1997); *In re Lesniewski,* 246 B.R. 202 (Bankr.E.D.Pa. 2000); *In re Reyes,* 238 B.R. 507 (Bankr. D.R.I.1999); *In re Holcomb,* 234 B.R. 79 (Bankr.N.D.Ill.1999); *In re Harbour Oaks Dev. Corp.,* 228 B.R. 801 (Bankr.M.D.Fla. 1999); *In re Costa,* 172 B.R. 954 (Bankr. E.D.Cal.1994); *In re Sullivan,* 90 B.R. 307, 308–09 (M.D.Tenn.1988). *But see Molloy v. Primus Automotive Fin. Svs.,* 247 B.R. 804 (C.D.Cal.2000) (finding implied right of action under section 524); *Malone v. Norwest Fin. Cal., Inc.,* 245 B.R. 389 (E.D.Cal.2000) (same); *Rogers v. NationsCredit Fin. Svs. Corp.,* 233 B.R. 98 (N.D.Cal.1999) (same).

█ Pursuant to section 524,

A discharge in a case under this title operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived. . . .

11 U.S.C. § 524(a)(2). Because section 524 does not expressly provide for a private right of action, plaintiff's claims for damages under section 524 must be dismissed unless a private right of action may be inferred from the statute. *See Burgert v. The Lokelani Bernice Pauahi Bishop Trust,* 200 F.3d 661, 664 (9th Cir.2000).

The Supreme Court has set forth four factors which are relevant to determining whether a private right of action is implicit in a statute:

First, is the plaintiff one of the class for whose especial benefit the statute was enacted—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* (citing *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)).

Plaintiff is a bankruptcy debtor, and thus, is within the class for whose benefit the statute was enacted. The cause of action is not one traditionally relegated to state law since the Bankruptcy Code is a uniquely federal creature. A private right of action could be considered consistent with the underlying legislative scheme to the extent that its purpose is to give debtors a fresh start and to prevent creditors from taking advantage of less sophisticated debtors.

█ The *Cort* factors, however, are not to be weighed equally. The central question is congressional intent. *See, e.g., California v. Sierra Club,* 451 U.S. 287, 297, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981); *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). In *Touche Ross & Co. v. Redington,* the Court explained:

It is true that in *Cort v. Ash,* the Court set forth four factors that it considered "relevant" in determining whether a private remedy is implicit in a statute not expressly providing one. But the Court did not decide that each of these factors

is entitled to equal weight. The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action. Indeed, the first three factors discussed in *Cort* —the language and focus of the statute, its legislative history, and its purpose, are ones traditionally relied upon in determining legislative intent. 442 U.S. 560, 575–76, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (internal citation omitted). Indeed, in applying *Cort*, the Ninth Circuit has "emphasized that congressional intent is the ultimate issue and has analyzed the language of the statute, legislative history, and the legislative scheme to determine this intent." *Burgert*, 200 F.3d at 664; *see also Transamerica Mortgage Advisors v. Lewis*, 444 U.S. 11, 18, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) ("Such intent may appear implicitly in the language or structure of the statute, or in the circumstances of its enactment.")

 Congress provided a remedy for violations of the discharge injunction in section 105(a) of the Code. That section empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Indeed, "civil contempt is the normal sanction for violation of the discharge injunction." 4 *Collier on Bankruptcy* ¶ 524.02[2][c] (15th ed.1999); *see also Bessette*, 240 B.R. at 155. Thus, implying a private right of action for violations of the discharge injunction would be inconsistent with the

legislative scheme since Congress already provided a remedy for such abuses. *See Bessette*, 240 B.R. at 155; *In re Costa*, 172 B.R. at 966. "[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica*, 444 U.S. at 19, 100 S.Ct. 242.

 The fact that the contempt remedy is discretionary does not, as plaintiff suggests, leave debtors without a remedy for violations of the discharge injunction should the court fail to find an implied right of action. A bankruptcy judge may impose monetary damages to compensate the debtor for her sustained losses as a sanction for civil contempt upon a creditor who violates a discharge injunction. *See In re Costa*, 172 B.R. at 963; *United States v. United Mine Workers*, 330 U.S. 258, 303–04, 67 S.Ct. 677, 91 L.Ed. 884 (1947).

 Both section 362 and section 524 were enacted by the same Congress on November 6, 1978. At that time, neither statute provided for a private right of action. Rather, it was generally held that enforcement of damage actions were limited to contempt actions. On July 10, 1984, however, Congress added subsection (h) to section 362 which expressly provides for a private right of action.[3] Significantly, that *same* day, the *same* Congress amended section 524; it did not, however, add a provision similar to section 362(h).[4] As one court explained:

---

**3.** Subsection (h) states: "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h).

**4.** Prior to 1984, courts remedied violations of both the automatic stay and discharge injunction though the court's contempt power. The use of the court's contempt power to remedy violations of the automatic stay was criticized by some who believed that the court could not use its contempt power under 18 U.S.C. § 401 to remedy violations of a statute. *See* Jeffrey A. Stoops, *Monetary Awards to the*

*Debtor for Violation of the Automatic Stay*, 11 Fla.S.U.L.Rev. 423, 439 (1983). Section 401 provides that the contempt power may be employed against those acts specified and "none other." The automatic stay is statutory, and a statute is not among those items punishable by contempt. *See* 18 U.S.C. § 401. Although the stay operates as a judicial injunction, it is still a creation of Congress, whereas the discharge "operate[s] as an injunction," 11 U.S.C. § 524(a), and thus, is among the acts specifically referred to in section 401 (granting power to punish "disobedience or resistance to its lawful writ, process, order, rule, decree, or command.")

Congressional intent could not be more clear. If Congress intended that there be a private right of action under § 524 it could have easily inserted a similar private remedy provision in § 524 at that time. Congress chose not to do that. When Congress wishes to provide a private damages remedy, it knows how to do so. Congress did just that when it amended § 362 in 1984. Thus, legislative history clearly indicates that Congress did not want to create a private right of action for a violation of § 524.

*Bessette,* 240 B.R. at 155 (internal citation omitted); *see also Touche Ross & Co.,* 442 U.S. at 572, 99 S.Ct. 2479.[5]

 Courts which have found a private right of action under section 524, have based their decisions, at least in part, on the concern that if a private right of action is not implied, debtors may be without a remedy as contempt is discretionary. This concern, however, is not a proper basis for inferring a private right of action. As the Supreme Court has repeatedly emphasized, "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co.,* 442 U.S. at 568, 99 S.Ct. 2479 (quoting *Cannon,* 441 U.S. at 688, 99 S.Ct. 1946). Rather, the court's task "is limited solely to determining whether Congress intended to create the private right of action asserted. . . ." *Id.*

Plaintiff also argues that if no private right of action is found, the class may be precluded from obtaining relief on a class wide basis because defendant will ultimately argue that contempt is not appropriate for class certification. This consequence, even if true, is irrelevant to the court's determination of whether Congress intend-

ed to imply a private right of action for violations of section 524. *See Cort,* 422 U.S. at 78, 95 S.Ct. 2080; *Touche Ross & Co.,* 442 U.S. at 575–76, 99 S.Ct. 2479.

In sum, there is no evidence of Congressional intent to create a private right of action in the text of section 524, the legislative history, or the legislative scheme. As set forth above, the evidence is to the contrary. Accordingly, plaintiff's first and third causes of action are dismissed.

### B. Claims For Declaratory Relief, Injunctive Relief, An Accounting, And Attorney's Fees (Counts 7–10)

 Defendant contends that plaintiff's claims for declaratory relief, injunctive relief, an accounting and attorney's fees must be dismissed to the extent they are premised upon defendant's alleged violations of the Bankruptcy Code. More specifically, defendant contends that these counts are preempted by the exclusive remedies provided for in the Bankruptcy Code.

The relief requested in counts 7 through 10 is premised solely on defendant's alleged violations of sections 362 and 524 of the Code. In *Bessette,* the court found that the remedial scheme provided for in the Bankruptcy Code for violations of sections 362 and 524, indicates that "Congress intended that violations of the automatic stay and the discharge injunction be remedied through the Bankruptcy Code rather than through state law actions for unjust enrichment." 240 B.R. at 163. Accordingly, the court concluded that the plaintiff's claim for unjust enrichment, which was dependent upon the alleged violations of sections 362 and 524, was

---

5. To the extent plaintiff contends that a private right of action under section 524 is expressly provided under section 105, as the court held in *Malone,* this court respectfully disagrees. "[S]ection 105 is not to be used for the purpose of creating private remedies that are not expressly or impliedly created in other provisions of Title 11." *Bessette,* 240

B.R. at 156; *see also In re Pierce,* 237 B.R. 748, 754 (Bankr.E.D.Cal.1998). "[A]lthough § 105 provides a basis for holding a party in contempt for a violation of the discharge injunction, it does not create a private right of action under § 524." *Molloy,* 247 B.R. at 818 n. 12.

preempted by the Bankruptcy Code. *Id.* Indeed,

> a mere browse through the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code ... demonstrates Congress's intent to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike. While it is true that bankruptcy law makes reference to state law at many points, the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal.

*MSR Exploration, Ltd. v. Meridian Oil, Inc.,* 74 F.3d 910, 913 (9th Cir.1996). In *MSR Exploration,* the Ninth Circuit held that the plaintiff's malicious prosecution claims were completely preempted by the structure and purpose of the Bankruptcy Code. In so finding, the court relied on the exclusivity of federal jurisdiction over bankruptcy matters and the complex, detailed and comprehensive nature of the Bankruptcy Code. *Id.* at 916. The court also found the numerous remedies provided for in the Code to preclude the misuse of the bankruptcy process, suggest that "Congress has considered the need to deter the misuse of process and has not merely overlooked the creation of additional remedies." *Id.* at 915.

The reasoning in *MSR Exploration* has been applied to preempt a claim for violation of the Illinois Consumer Fraud and Deceptive Practices Act ("CFA") where plaintiff's claim "depended solely upon, and thus [was] intricately related to, alleged violations of the Bankruptcy Code." *Holloway,* 227 B.R. at 507–08. In *Holloway,* the plaintiff alleged that defendant violated the CFA by filing inflated, deceptive and unfair proofs of claim in the bankruptcy proceedings. The court explained:

> Without the requirement that defendant submit proofs of claim under the Bankruptcy Code, and the Code's codification of a permissible method by which to

value secured claims, Plaintiff would have no grounds on which to bring an action for fraud under the CFA. Thus Plaintiff's CFA claim is wholly dependent upon the Bankruptcy Code.... Under both the reasoning of *MSR Exploration* and *Shape,*[6] and because the Code has sections applicable to adjudicate the value of secured claims and provides remedies for fraud, we hold that Plaintiff's state law CFA claim is preempted by the Bankruptcy Code.

*Id.* at 508.

The same is true here. Counts 7 through 10 depend solely upon violations of sections 362 and 524. As plaintiff admits, "[t]he issues raised by Plaintiff's Complaint are bankruptcy issues; [plaintiff's] non-bankruptcy claims turn on resolution of the bankruptcy issues." Plf. Reply Br. In Supp. of Mot. to Refer at 2. Indeed, without proof of defendant's violation of the automatic stay and/or discharge injunction provisions, plaintiff's claims would fail. Accordingly, counts 7 through 10 are preempted by the Bankruptcy Code, and, are therefore, dismissed.

## C. FDCPA and RICO Claims (Counts 5 and 6)

■ Plaintiff's FDCPA and RICO claims are also premised solely defendant's alleged violations of the automatic stay, § 362, and discharge injunction, § 524. Defendant moves to dismiss these claims on the ground that plaintiff's exclusive remedies for said violations are those provided for in the Bankruptcy Code.

The reasoning of both *MSR Exploration* and *Holloway* has been applied to bar claims under the FDCPA which are premised on violations of the Bankruptcy Code. *See Gray–Mapp v. Sherman,* 100 F.Supp.2d 810 (N.D.Ill.1999); *Baldwin v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.,* 1999 WL 284788 (N.D.Ill. Apr. 26, 1999), 42 Collier Bankr.Cas.2d 170 (N.D.Ill. Apr. 26, 1999). In *Baldwin,* the

---

**6.** Referring to *In re Shape, Inc.,* 135 B.R. 707, 708 (Bankr.D.Me.1992).

court considered whether an FDCPA claim could be premised solely on the filing of a proof of claim in a Chapter 13 proceeding. *Id.* at \*2. In holding that it could not, the court observed:

> This case ... raises a potential conflict between federal statutes, because Plaintiff's complaint seeks to produce an external challenge to alleged wrongdoing that occurred during bankruptcy proceedings, which were governed by "the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code," which "create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike."

*Id.* (quoting *MSR Exploration,* 74 F.3d at 913). The court found that although the FDCPA seeks "to eliminate practices that 'contribute to the number of personal bankruptcies,'" *id.* at \*3 (quoting 15 U.S.C. § 1692(a)), should a bankruptcy occur despite its protections, a debtor's sole remedy remains under the Bankruptcy Code. *Id.* at \*3 (citing *Kokoszka v. Belford,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974)). The court also found the reasoning of the cases addressing the Bankruptcy Code's preemption of state law remedies persuasive. *Id.* at \*5. The court specifically relied on *Pereira v. First N. Am. Nat'l Bank,* 223 B.R. 28 (1998). There, the court held the plaintiff's state law claims were preempted by the Bankruptcy Code, reasoning that,

> the Bankruptcy provides the remedial scheme for addressing violations of Sections 362 and 524, including the filing of civil contempt proceedings under the bankruptcy court's inherent contempt power and Section 105. A proper complaint filed in an appropriate forum may

allow the Plaintiff to take advantage of these remedies.

*Id.* at 31–32.

As set forth above, Congress has provided remedies for violations of the automatic stay and discharge injunction provisions in the Bankruptcy Code. *See* 11 U.S.C. §§ 105(a), 362(h), 524(a)(2). Moreover, to adjudicate plaintiff's FDCPA claim, which is based upon defendant's alleged collection of the debt in violation of sections 362 and 524, the court must determine (1) whether the payments received from plaintiff were "voluntary" under section 524(f), whether defendant was required to enter into a reaffirmation agreement with plaintiffs pursuant to section 524(c), and whether the "ride through" in *In re Parker,* 139 F.3d 668, precluded defendant from engaging in the acts plaintiff contends violated sections 362 and 524. These issues are wholly unrelated to the FDCPA and allowing plaintiff to proceed with her claims under the FDCPA would risk interfering with "the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code." *See MSR Exploration,* 74 F.3d at 913. To the extent plaintiff premises her FDCPA claim on violations of sections 362 or 524, said claims are barred. Plaintiff's remedies for violations of the Bankruptcy Code lie within the Code itself.

The same reasoning applies to plaintiff's RICO claim to the extent it is based upon violations of sections 362 and 524.[7]

## CONCLUSION

Defendant's motion to dismiss counts 1 and 3 is GRANTED. Defendant's motion to dismiss counts 5–10 is GRANTED to the extent these claims are premised on violations of sections 362 and 524 of the Code. The remaining core claims, counts

---

[7]. Defendant also argues that plaintiff's FDCPA claim must fail because plaintiff failed to adequately allege that it is a "debt collector" within the meaning of the FDCPA, and that plaintiff's RICO claim must fail because plaintiff failed to adequately allege an "enter-

prise" as required to state a claim under RICO. Because the court finds plaintiff's exclusive remedy for these alleged violations lies in the Bankruptcy Code, the court need not address these additional arguments.

2 and 4, are REFERRED to the bankruptcy court for consideration.

IT IS SO ORDERED.