**In re Darlene M. BASSETT, Debtor.**

**Darlene M. Bassett, Appellant,**

**v.**

**American General Finance, Inc., Appellee.**

**BAP No. WW–00–1071–CCaK. Bankruptcy No. 97–6041. Adversary No. 99–9635.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 13, 2000.

Decided Nov. 17, 2000.

Frederick W. Schoepflin, Keller, Rohrback, LLP, Seattle, WA, for Darlene M. Bassett, appellant.

Frederick B. Rivera, Perkins Coie, Seattle, WA, for American General Finance, Inc., appellee.

Before CARLSON,[1] CARROLL,[2] and KLEIN, Bankruptcy Judges.

## OPINION

CARLSON, Bankruptcy Judge.

Debtor brought a class action asserting a private right of action for violation of the discharge injunction based on a creditor's collection of debts pursuant to an invalid reaffirmation agreement. The bankruptcy court found that the reaffirmation agreement was valid and dismissed the action with prejudice. We affirm in part and reverse in part. We hold that the reaffirmation agreement was invalid, that there is no private right of action for violation of section 11 U.S.C. § 524, and that Debtor

1. The Honorable Thomas E. Carlson, Bankruptcy Judge for the Northern District of California, sitting by designation.

2. The Honorable Ellen Carroll, Bankruptcy Judge for the Central District of California, sitting by designation.

may enforce the discharge injunction through civil contempt proceedings.

## FACTS

Debtor Darlene Bassett filed a chapter 7 case on May 2, 1997. Among her scheduled debts was a secured purchase-money debt to American General Finance, Inc. (AGF) in the amount of $2,103. At a continued meeting of creditors at which Debtor's counsel did not appear, Debtor signed a reaffirmation agreement prepared by AGF. Debtor's counsel later signed the reaffirmation agreement, certifying that the attorney had fully advised Debtor regarding the agreement, that Debtor's decision to sign the agreement was informed and voluntary, and that the agreement did not impose an undue hardship on Debtor. AGF filed the reaffirmation agreement with the court, Debtor received a discharge, and the chapter 7 case was closed. Debtor did not attempt to rescind the reaffirmation agreement under § 524(c)(4).

Debtor made the monthly payments called for in the reaffirmation agreement through February 1999. After she failed to make the March and April 1999 payments, AGF allegedly threatened to accelerate the loan and made numerous calls to Debtor attempting to collect the reaffirmed debt.

In November 1999, Debtor filed a class action adversary proceeding in the bankruptcy court alleging, *inter alia*, that AGF violated the discharge injunction by collecting a discharged debt pursuant to a reaffirmation agreement that does not meet the requirements of § 524(c).

Debtor alleged that the particular form of the reaffirmation agreement used by AGF caused the agreement to be void and unenforceable for two reasons. First, the provision advising Debtor of her right to rescind the agreement was not "clear and conspicuous" as required by § 524(c)(2). Second, the agreement impermissibly discouraged Debtor from exercising her right to rescind by stating "[r]escission of the Reaffirmation Agreement shall be considered default under the terms and conditions of the Installment Agreement referred to above."

The complaint asserts the following six separate claims for relief based on AGF's use of this reaffirmation agreement:

(1) violation of the discharge injunction of § 524;

(2) violation of the automatic stay;

(3) civil contempt for violation of the discharge injunction;

(4) violation of the Washington Consumer Protection Act;

(5) unjust enrichment and constructive trust; and

(6) violation of the Truth in Lending Act.

Debtor seeks injunctive, declaratory, and monetary relief against AGF on behalf of all debtors affected by AGF's use of the improper reaffirmation agreement.

The bankruptcy court granted AGF's motion for judgment on the pleadings, determining that the reaffirmation agreement satisfied all statutory requirements regarding form and was fully enforceable under § 524(c). As an alternative basis for its decision, the court ruled that any defect in the form of the agreement was cured by the certification by Debtor's attorney that she advised Debtor of her rights.

The court entered a judgment dismissing the action with prejudice without addressing Plaintiff's request for class certification. Debtor filed a timely notice of appeal.

## ISSUES ON APPEAL

(1) Does the reaffirmation agreement meet the requirements of § 524(c)?

(2) Is there a private right of action for violation of § 524?

(3) Does Debtor state a valid claim for civil contempt for violation of the discharge injunction?

(4) Does Debtor state a valid claim for violation of the automatic stay?

(5) Are Debtor's state law claims preempted?

(6) Does Debtor state a valid claim under the Truth in Lending Act?

## STANDARD OF REVIEW

■ The bankruptcy court decision granting AGF's motion for judgment on the pleadings is subject to *de novo* review. *Cohen v. Stratosphere Corp.*, 115 F.3d 695, 700 (9th Cir.1997). In exercising such review, we accept as true all material allegations in the complaint and construe them in a light most favorable to Debtor. *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986).

## DISCUSSION

### I

### Validity of Reaffirmation Agreement

■ Debtor asserts that the AGF reaffirmation agreement is unenforceable, because the language advising her that she may rescind the reaffirmation agreement is not "clear and conspicuous." The relevant portion of the reaffirmation agreement appears as follows:

The parties understand that this agreement is purely voluntary and that the debtor may rescind the agreement at any time prior to discharge or within 60 days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the creditor. Rescission of the Reaffirmation Agreement shall be considered default under the terms and conditions of the Installment Agreement referred to above.

THE DEBTOR UNDERSTANDS THAT THIS AGREEMENT IS NOT REQUIRED UNDER THE UNITED STATES BANKRUPTCY CODE TITLE 11 U.S.C. AND NOT REQUIRED UNDER NON BANKRUPTCY LAW OR ANY AGREEMENT NOT IN ACCORDANCE WITH THE PROVISION OF 11 U.S.C. SECTION 524(c).

Section 524(c)(2)(A) mandates that a reaffirmation agreement contain "a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim." 11 U.S.C. § 524(c)(2)(A).

■ Whether the right-to-rescind language is clear and conspicuous is a question of law for the court to decide. *In re Roberts*, 154 B.R. 967, 970 (Bankr.D.Neb. 1993).

■ A reaffirmation agreement that does not comply fully with § 524 is void and unenforceable. *Republic Bank of Cal., N.A. v. Getzoff (In re Getzoff)*, 180 B.R. 572, 574 (9th Cir. BAP 1995). *Accord, Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 443–45 (1st Cir.2000).

To determine whether language is clear and conspicuous, bankruptcy courts draw upon the definition of "conspicuous" found in the Uniform Commercial Code. *See In re Noble*, 182 B.R. 854, 858 (Bankr. W.D.Wash.1995); *Roberts*, 154 B.R. at 969–70. Section 1–201(10) of the Uniform Commercial Code provides:

A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NON–NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. But in a telegram any stated term is "conspicuous". Whether a term or clause is "conspicuous" or not is for decision by the court.

In determining whether language disclaiming implied warranties was conspicuous, one court identified the following relevant factors:

(1) the color of print in which the purported disclaimer appears; (2) the style of print in which the disclaimer is written; (3) the size of the disclaiming language, particularly in relation to other print in the document; (4) the location of the disclaimer in the contract; (5) the appearance of the term "merchantability" with respect to color, style, size, and type of print in the disclaimer clause; and (6) the status of the parties contesting the validity of the disclaimer, namely whether they be consumers or commercially sophisticated entities. While these factors lend aid to the determination of what constitutes "conspicuous" language, the court believes that no single factor is dispositive nor are these enumerated factors exhaustive of all the criteria that can be used in examining a disclaimer.

*Myrtle Beach Pipeline Corp. v. Emerson Elec. Co.*, 843 F.Supp. 1027, 1038 (D.S.C. 1993), *aff'd*, 46 F.3d 1125 (4th Cir.1995).

The right-to-rescind language in the AGF reaffirmation agreement is not conspicuous. Its language is printed in lower-case letters, while nearby language is printed in upper-case letters. This has the effect of deemphasizing the right-to-rescind language, an effect directly contrary to what § 524(c)(2)(A) requires. *Roberts*, 154 B.R. at 970; *Noble*, 182 B.R. at 858. The right-to-rescind language is also rendered visually less prominent by the addition of language stating that rescission constitutes a default.

We need not address whether the warnings required under § 524(c)(2) must always be printed in bold or upper-case letters. On this particular form, the combined effect of printing the right-to-rescind language in lower-case type, of including unnecessary language in the same paragraph, and of printing nearby language in upper-case type renders the present reaffirmation agreement unenforceable.[3]

■ The bankruptcy court held that any infirmities in the reaffirmation agreement were cured by the fact that Debtor's counsel signed the following certification:

THIS AGREEMENT REPRESENTS A FULLY INFORMED AND VOLUNTARY AGREEMENT THAT DOES NOT IMPOSE AN UNDUE HARDSHIP ON THE DEBTOR OR ANY DEPENDENT OF THE DEBTOR. FURTHER, AS ATTORNEY FOR THE DEBTOR, I HAVE FULLY ADVISED THE DEBTOR OF THE LEGAL EFFECT AND CONSEQUENCES OF SUCH AGREEMENT AND OF THE LEGAL EFFECT AND CONSEQUENCES OF DEFAULT UNDER SUCH AGREEMENT.

AGF argues that a debtor's attorney can cure a creditor's defective form: "[c]larity and conspicuity must each be considered under the totality of the circumstances. In this case, those circumstances include Bassett's representation by counsel, and a certification by her counsel, that Bassett

3. Debtor also argues that the AGF reaffirmation agreement is unenforceable because it states that rescission of that agreement constitutes a default on the underlying debt. We agree that the rescission-as-default language poses a risk for serious abuse of the reaffirmation process. If the debtor was not otherwise in default under the loan, treating rescission of the reaffirmation agreement as creating a default would modify the loan agreement and significantly chill the debtor's exercise of the right to rescind by creating consequences of rescission not contemplated in § 524(c). *See generally In re Ireland*, 241 B.R. 539, 540 (Bankr.E.D.Mich.1999); *Wiley v. Mason (In re Wiley)*, 224 B.R. 58, 71 (Bankr.N.D.Ill.1998),

*vacated on other grounds*, 237 B.R. 677 (Bankr.N.D.Ill.1999). Such a result would be contrary to Congress' intent freely to permit debtors to rescind reaffirmation agreements. Even if the debtor was otherwise in default, the language would still be misleading in that it does not clarify that the debtor would still have no *in personam* liability on the discharged debt following rescission of the reaffirmation agreement. We need not decide whether the rescission-as-default language by itself renders the AGF reaffirmation agreement unenforceable, however, as we conclude the agreement is unenforceable because the required right-to-rescind language is not conspicuous.

was fully informed." We think this argument proves too much.

We agree with Debtor's argument that a debtor's attorney cannot cure a defective form: "Congress did not say that an agreement passes muster when it contains either (1) the prescribed conspicuous notices that affirmation is not required and may be rescinded under Code § 524(c)(2) *or* (2) the attorney's declaration under § 524(c)(3); Congress plainly required *both*."

█ The structure of § 524(c) suggests that attorney certification does not in any way vitiate the requirement that the right-to-rescind language be conspicuous. If Congress had meant that attorney certification was to be a sufficient safeguard, it would not have made the conspicuous statements prescribed by § 524(c)(2) independent essential elements of an enforceable reaffirmation agreement. Under the statute as written, attorney certification operates only to obviate judicial approval of a reaffirmation agreement as not imposing undue hardship and as being in the best interest of the debtor. 11 U.S.C. § 524(c)(6).

Congress plainly did not choose to rely solely upon debtor's counsel to advise the debtor of the right to rescind a reaffirmation agreement. Rather, it adopted a belt-and-suspenders approach in which conspicuous warnings in the reaffirmation agreement constitute an important additional safeguard. We view this scheme as remedial in nature. In view of the creditor's power to control the form of the reaffirmation agreement it uses, the practical, efficient way to enforce the form requirements in this remedial scheme is to allocate to the creditor all of the risk of non-compliance. It is therefore appropriate to construe the statutory form requirements strictly, even where debtor is represented by counsel.

█ A second reason it is irrelevant that Debtor received advice of counsel is that the test for determining whether the right-to-rescind language is conspicuous is an objective one. The Uniform Commercial Code states that language is conspicuous if "a *reasonable* person against whom it is to operate ought to have noticed it." U.C.C. § 1–201(10) (emphasis added). The factors identified in *Myrtle Beach Pipeline* for determining whether language is conspicuous also emphasize the manner in which the language is printed, not the non-drafting party's subjective understanding. *Myrtle Beach Pipeline,* 843 F.Supp. at 1038; *see also Getzoff,* 180 B.R. at 575 (protections of § 524 not limited to unsophisticated debtors). A creditor acts at its peril when it uses a reaffirmation agreement that does not adhere fully to those statutory form requirements.

█ In short, the statutory requirements of form are strictly construed. A creditor acts at its peril when it uses a reaffirmation agreement that does not adhere fully to those statutory form requirements, regardless of whether the debtor is represented by counsel.

## II

### Private Right of Action

█ The court dismissed Debtor's first claim for relief, which asserts a private right of action under § 524, on the implicit basis that it was mooted by the determination that the reaffirmation agreement satisfied the requirements of § 524.

Although the bankruptcy court did not focus on whether there is a private right of action under § 524, we must address that question, because AGF raised the argument below and it is our duty to affirm on any ground presented in the record, *e.g., Dittman v. California,* 191 F.3d 1020, 1027 n. 3 (9th Cir.1999), *cert. denied,* — U.S. ——, 120 S.Ct. 2717, 147 L.Ed.2d 982 (2000). In recognition of this obligation, the parties have extensively briefed and argued before us the merits of the private-right-of-action question.

As § 524 does not expressly authorize any action for enforcement of its provisions, we look to the case law addressing the circumstances in which a private right of action may be implied. The Supreme Court enunciated the following test in *Cort v. Ash:*

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted,"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) (citations omitted).

The courts are split as to whether a debtor may assert an implied private right of action for violation of § 524.

The majority of published decisions hold that § 524 does not create a private right of action. *Walls v. Wells Fargo Bank, N.A.,* 255 B.R. 38, 42–45 (E.D.Cal.2000); *Kibler v. WFS Fin., Inc.,* 2000 WL 1470655 at *4–8 (C.D.Cal. Sept. 13, 2000); *Peterson v. Wells Fargo Bank, N.A.,* 2000 WL 1225788 at *4–6 (E.D.Cal. Aug. 17, 2000); *Cox v. Zale Delaware, Inc.,* 242 B.R. 444, 447–49 (N.D.Ill.1999); *Pereira v. First N. Am. Nat'l Bank,* 223 B.R. 28, 30–31 (N.D.Ga.1998); *Sullivan v. All States Lumber, Inc. (In re Sullivan),* 90 B.R. 307, 308–09 (M.D.Tenn.1988); *Reyes v. FCC Nat'l Bank (In re Reyes),* 238 B.R. 507, 510–12 (Bankr.D.R.I.1999); *Costa v. Welch (In re Costa),* 172 B.R. 954, 965–66 (Bankr. E.D.Cal.1994).

A minority of decisions recognize an implied private right of action under § 524. *Molloy v. Primus Auto. Fin. Servs.,* 247 B.R. 804, 815–20 (C.D.Cal.2000); *Malone v. Norwest Fin. Cal., Inc.,* 245 B.R. 389, 395–98 (E.D.Cal.2000); *Rogers v. NationsCredit Fin. Servs. Corp.,* 233 B.R. 98, 108–09 (N.D.Cal.1999).

The First Circuit, when presented the question, exercised its discretion to decline to "jump into the fray" in light of the unquestioned availability of a contempt remedy for violations of the discharge injunction. *Bessette,* 230 F.3d at 443–45 (1st Cir.2000). Although we agree with the First Circuit about the availability of contempt as a method for enforcing the discharge injunction, we will deal with the question that the parties have presented to us.

The first and last of the *Cort* factors are plainly satisfied. Debtors are unquestionably members of the class for whom the protections of § 524 were enacted. *Walls,* 255 B.R. at 43; *Kibler,* 2000 WL 1470655 at *5; *Malone,* 245 B.R. at 396. Because bankruptcy is solely a creature of federal law, recognition of a private right of action for violation of the bankruptcy discharge also does not invade an area traditionally reserved for state law. *Id.*

The cases that decline to recognize a private right of action under § 524 rely upon the second and third *Cort* factors. They note that civil contempt is the traditional remedy for violation of the discharge injunction, and that Congress evinced its intent not to authorize a private right of action under § 524 when it created a right of action for violation of the automatic stay, but did not include a similar provision in § 524. *E.g., Walls,* 255 B.R. at 43; *Kibler,* 2000 WL 1470655 at *5–8; *Pereira,* 223 B.R. at 30; *Costa,* 172 B.R. at 966.

The minority of cases finding an implied right of action rely on perceived limits in the efficacy of the contempt remedy, policy considerations favoring rigorous enforcement of the bankruptcy discharge, and the power of the bankruptcy court under 11 U.S.C. § 105 to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this

title." *E.g., Malone,* 245 B.R. at 394–98; *Rogers,* 233 B.R. at 108–09.

The majority line of cases holding there is no private right of action for violation of § 524 is more persuasive.

 Contempt proceedings are the traditional method for addressing a violation of the discharge injunction. *Walls,* 255 B.R. at 43; *Kibler,* 2000 WL 1470655 at \*5; *Peterson,* 2000 WL 1225788 at \*5; *Pereira,* 223 B.R. at 30; *Costa,* 172 B.R. at 966. Through civil contempt proceedings, an aggrieved debtor can obtain compensatory damages, attorneys fees, and the offending creditor's compliance with the discharge injunction.[4] *United States v. United Mine Workers,* 330 U.S. 258, 304, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *Bessette,* 230 F.3d at 444; *Crystal Palace Gambling Hall, Inc. v. Mark Twain Indus., Inc. (In re Crystal Palace Gambling Hall, Inc.),* 817 F.2d 1361, 1366–67 (9th Cir.1987); *Peterson,* 2000 WL 1225788 at \*5–6; *Cox,* 242 B.R. at 448–49; *Costa,* 172 B.R. at 964–65. Douglas Rendleman, *Compensatory Contempt: Plaintiff's Remedy When Defendant Violates an Injunction,* 1980 U.Ill.L.F. 971.

This tradition of enforcing the discharge injunction through civil contempt proceedings militates against the implication of a private damage remedy in two ways. It lessens the need for a damage remedy. It also suggests that Congress would expect the discharge injunction to be enforced in this traditional manner unless it specified otherwise. *Costa,* 172 B.R. at 966.

Congress' express creation of a private damage action for violation of the automatic stay suggests that Congress acted deliberately in failing to specify a similar remedy for violation of the discharge injunction. The automatic stay of 11 U.S.C. § 362 and the discharge injunction of § 524 are closely related. The automatic stay protects the debtor against collection activities at the outset of the case. When a discharge is entered, the automatic stay ceases to protect the debtor, and the debtor receives similar protections through the discharge injunction.

Both § 362 and § 524 were enacted in tandem in 1978 and then amended in tandem in 1984. A new provision was added to § 362 in 1984 authorizing an individual debtor to recover compensatory and punitive damages for willful violation of the automatic stay.[5] Congress, while making other adjustments to § 524 in 1984, did not add a damage remedy to that section.

The close relationship of the two statutes, the fact that they were both amended at the same time, and the fact that Congress authorized a damage action under § 362, suggest that Congress did not intend to permit a damage action under § 524. *Walls,* 255 B.R. at 43; *Kibler,* 2000 WL 1470655 at \*7–8; *Peterson,* 2000 WL 1225788 at \*5; *Cox,* 242 B.R. at 447–48; *Costa,* 172 B.R. at 966.

Congress' repeated attention to § 524 also suggests that its failure to authorize a private damage action for violation of that statute was not a mistake. Congress has amended § 524 three times since that stat-

---

**4.** It is an open question whether a debtor can recover punitive damages in a civil contempt proceeding for violation of the discharge injunction. Some decisions state that the court may award punitive damages. *Bessette,* 230 F.3d at 445 (citing cases). These decisions do not, however, address the traditional distinction between civil and criminal contempt. A contempt proceeding is civil if the purpose is remedial and intended to coerce compliance. *Mackler Prods., Inc. v. Cohen,* 146 F.3d 126, 128–29 (2d Cir.1998); *Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc.,*

877 F.2d 787, 790 (9th Cir.1989); *Costa,* 172 B.R. at 966. Punishment for past conduct can be imposed only through criminal contempt proceedings, which are generally initiated only by the government or the court. *Id.*

**5.** Section 362(h) provides:

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

ute was enacted in 1978.[6] These amendments delicately balance the concerns of debtors' advocates, who wish to restrict reaffirmation agreements so that debtors do not foolishly give up the benefits of the discharge, and the concerns of creditor groups, who urge that debtors should be encouraged to take responsibility for their debts and that reaffirmation agreements should not be discouraged. Under § 524, reaffirmation agreements are permitted but circumscribed. The history of controversy surrounding reaffirmation agreements suggests that Congress did not simply forget to consider creating a damage action under § 524 when it created such a remedy under § 362. The history of not fully vindicating either side in the reaffirmation debate is consistent with limiting debtors to the remedies available through civil contempt proceedings.

Both Debtor and the *Malone* decision rely heavily upon *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), in finding an implied private right of action under § 524. *Malone*, 245 B.R. at 397. We agree that *Transamerica Mortgage* is particularly pertinent to the question before us. We conclude, however, that it counsels against recognizing a private right of action under § 524.

In *Transamerica Mortgage,* a private party attempted to bring an action under the Investment Advisers Act of 1940. That Act expressly authorizes the government to bring civil and criminal actions, but does not expressly authorize private actions. The Act also provides that any advisory contract violating the Act is void.

The Court held that the statute "implies a right to specific and limited relief in federal court." *Id.* at 18, 100 S.Ct. 242. By declaring certain contracts void, the Act "necessarily contemplates that the issue of voidness under its criteria may be litigated somewhere." *Id.* Thus, a private party can bring an action for rescission, restitution, and injunctive relief against further enforcement of the contract. *Id.* at 19, 100 S.Ct. 242.

The Court declined, however, to recognize a private right of action "for damages or other monetary relief." *Id.* Because previously enacted securities laws expressly authorized private damage suits, but the Investment Advisers Act did not, the Court found that Congress did not intend to permit such actions under that Act. *Id.* at 21, 100 S.Ct. 242. The Court expressly rejected the argument that a private right of action should be recognized because it would further the general purpose of the Act, where other evidence indicated that Congress did not intend to create such a right.

Section 206 of the Act here involved concededly was intended to protect the victims of the fraudulent practices it prohibited. But the mere fact that the statute was designed to protect advisers' clients does not require the implication of a private cause of action for damages on their behalf. The dispositive question remains whether Congress intended to create any such remedy. Having answered that question in the negative, our inquiry is at an end.

*Id.* at 24, 100 S.Ct. 242 (citations omitted). The Court also stated that the right to

**6.** The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353:(1) extended the time limit for rescission from 30 to 60 days; (2) required that right-to-rescind language be conspicuous; and (3) eliminated the requirement that the court determine whether the reaffirmation agreement will benefit the debtor if the debtor's attorney signs the agreement. The Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub.L. No. 99–554, made discharge hearings discretion-

ary even where the debtor does not seek to reaffirm a debt. The Bankruptcy Reform Act of 1994, Pub.L. No. 103–394:(1) made discharge hearings discretionary even where the debtor seeks to reaffirm a debt if the debtor's attorney signs the reaffirmation agreement; and (2) required that a reaffirmation agreement state conspicuously that the debtor is not required to sign such an agreement. *See* 4 Collier on Bankruptcy ¶ 524.LH (15th ed. rev.1996).

bring an action for rescission should be narrowly construed to preclude any form of monetary damages, because "[s]uch relief could provide by indirection the equivalent of a private damages remedy that we have concluded Congress did not confer." *Id.* at 24 n. 14, 100 S.Ct. 242.

The lesson of *Transamerica Mortgage* is that the courts should provide aggrieved debtors "specific and limited" means to enforce their rights under § 524 of the Bankruptcy Code. The courts have long done so by permitting debtors to enforce the discharge injunction of § 524 through civil contempt proceedings. As noted above, aggrieved debtors may obtain compensatory damages, attorneys fees, and compliance with the discharge injunction in that manner. *Transamerica Mortgage* suggests with equal force that debtors should not be afforded the broader relief of a private right of action for damages. Congress' creation of such a right under § 362 but not under § 524 suggests even more strongly than the legislative actions under consideration in *Transamerica Mortgage* that Congress did not intend to authorize damage actions under § 524.

 Section 105 does not provide the basis for a private right of action.[7] First, if Congress believed § 105 authorized a private damage action for a violation of the Bankruptcy Code, it would have had little need to create a private right of action under § 362(h) for violation of the automatic stay. Second, § 105 may not be relied upon to alter the substantive rights fixed in the Bankruptcy Code. *Kibler,* 2000 WL 1470655 at *6; *Molloy,* 247 B.R. at 818 n. 12; *Costa,* 172 B.R. at 965.

Where the evidence indicates that Congress deliberately declined to authorize a private right of action for violation of

§ 524, § 105 should not be used to effect a contrary result.

The bankruptcy court did not err in dismissing Debtor's first claim for relief.

## III

### Contempt

Debtor's third claim for relief asserts that AGF should be held in civil contempt for violating the discharge injunction by collecting a discharged debt pursuant to an invalid reaffirmation agreement. The bankruptcy court dismissed this claim on the basis that the reaffirmation agreement was fully enforceable.

Debtor argues that because the bankruptcy court erred in determining the reaffirmation agreement to be valid, it also erred in dismissing the contempt claim. We agree.

If a reaffirmation agreement does not satisfy the requirement of § 524(c), it is void. *Getzoff,* 180 B.R. at 574.

 Collection of a discharged debt pursuant to an invalid reaffirmation agreement violates the discharge injunction. *Bessette,* 230 F.3d at 443–45; *Wiley v. Mason (In re Wiley),* 224 B.R. 58, 65 (Bankr.N.D.Ill.1998).

 The bankruptcy court may use its contempt power to enforce the discharge injunction. *E.g., Bessette,* 230 F.3d at 444–45, *Hardy v. United States (In re Hardy),* 97 F.3d 1384, 1389–90 (11th Cir.1996); *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.),* 77 F.3d 278, 284–85 (9th Cir.1996).

 AGF contends that Debtor does not state a claim for civil contempt, even if the reaffirmation agreement is not enforceable, because its good faith compliance with the law is a defense to

7. 11 U.S.C. § 105(a) provides:
 The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

a contempt motion. This argument is unpersuasive.

■ The courts have employed an objective test in determining whether an injunction should be enforced via the contempt power. "[T]he focus of the court's inquiry in civil contempt proceedings is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." *Hardy*, 97 F.3d at 1390 (quoting *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir.1990)). Debtor's complaint alleged sufficient facts to state a claim under this test.

■ The bankruptcy court has broad discretion in determining whether to issue an order to show cause re contempt and in fashioning a remedy for violation of the discharge injunction. *Costa*, 172 B.R. at 963–64. The bankruptcy court did not, however, exercise such discretion in dismissing Debtor's civil contempt claim. Rather, the court dismissed the claim on the faulty premise that the reaffirmation agreement was fully enforceable.

The bankruptcy court erred in dismissing Debtor's third claim for relief.

## IV

### Violation of Automatic Stay

■ Debtor's second claim for relief asserts that AGF violated the automatic stay. The complaint alleges in relevant part "American General made regular and repeated telephone calls to Ms. Bassett's home during the pendency of Ms. Bassett's bankruptcy proceedings to demand repayment of its loans."

■ A creditor does not, absent some sort of harassment or coercion, violate the automatic stay by asking debtor to sign a reaffirmation agreement. *In re Duke*, 79 F.3d 43, 45 (7th Cir.1996); *Cox*, 242 B.R. at 449; *Wiley*, 224 B.R. at 66. There is no reason to depart from this rule in the present case merely because the reaffirmation agreement is unenforceable. *See Wiley*, 224 B.R. at 66 (not a violation of stay to seek reaffirmation agreement that is unenforceable because not filed with court).

Because the complaint can reasonably be construed to allege that AGF harassed or coerced Debtor into signing the reaffirmation agreement at a time when the automatic stay was still in effect, it states a claim upon which relief can be granted.

The bankruptcy court erred in dismissing Debtor's second claim for relief.

## V

### Preemption of State Law Claims

■ Two of Debtor's claims are predicated upon theories of Washington state law.

Debtor's fourth claim for relief alleges "[t]he unenforceability of the reaffirmation agreement entered into with Ms. Bassett and the Class is the proper subject for relief under Washington's Consumer Protection Act, RCW Ch. 19.86." Debtor's brief does not explain what provision of the Washington statute Debtor invokes or what relief is sought thereunder. The complaint, however, does make plain that Debtor is attempting to employ state law as a remedy for AGF's use of a reaffirmation agreement that violates federal bankruptcy law.

Debtor's fifth claim for relief seeks recovery of funds collected under the reaffirmation agreement under state-law theories of unjust enrichment and constructive trust.

The courts have uniformly held that federal law provides the sole remedy for violation of § 524 and that all state-law claims are preempted. *Bessette*, 230 F.3d at 447–48; *Walls*, 255 B.R. at 44–47; *Cox*, 242 B.R. at 449–50; *Rogers*, 233 B.R. at 109–110; *Pereira*, 223 B.R. at 31–32.

These decisions are based on the conclusion that Congress established its own

remedies for abuse of the bankruptcy process, and that Congress intended those remedies to occupy the field. *Bessette,* 230 F.3d at 447–48; *Walls,* 255 B.R. at 46; *Cox,* 242 B.R. at 450; *Rogers,* 233 B.R. at 110.

Although the Ninth Circuit has not specifically addressed remedies for the misuse of reaffirmation agreements, it has held in other contexts that the Bankruptcy Code and Federal Rules of Bankruptcy Procedure provide the sole remedy for wrongful conduct in bankruptcy proceedings. *MSR Exploration, Ltd. v. Meridian Oil, Inc.,* 74 F.3d 910, 913–16 (9th Cir.1996); *Gonzales v. Parks,* 830 F.2d 1033, 1035–37 (9th Cir. 1987).

We hold that the federal statutory scheme entailed in the Bankruptcy Code is so pervasive with respect to the regulation of reaffirmation agreements that Congress intended to occupy the field to the exclusion of state law. Accordingly, the bankruptcy court did not err in dismissing Debtor's fourth and fifth claims for relief.

## VI

### Truth in Lending Act

Debtor contends that the bankruptcy court also erred in dismissing her claim under the Truth in Lending Act, 15 U.S.C. § 1601, et seq. (TILA). Debtor argues "[c]reditors must comply with the requirements of the TILA in all their actions related to reaffirmation agreements. *See In re Kamps,* 217 B.R. 836 (Bankr. C.D.Cal.1998)." This argument is unpersuasive.

Reaffirmation agreements are exempt from TILA. That statute expressly authorizes the Board of Governors of the Federal Reserve to promulgate regulations to carry out the purposes of the Act. 15 U.S.C. § 1604(a). The Board adopted Regulation Z, 12 C.F.R. 226 (1998), to describe the disclosures that a lender must make in consumer credit transactions. In specifying the new disclosures required when there is a change in a credit agreement, Regulation Z states that no new disclosures are required where the change results from "an agreement involving a court proceeding." 12 C.F.R. §§ 226.9(c)(2); 226.20(a)(3). The Official Staff Commentary to C.F.R. § 226.20(a)(3) states that this exception includes reaffirmation agreements regarding debts discharged in bankruptcy.

Debtor's reliance on *Kamps* is misplaced. In that case, the debtor's attorney had not certified the reaffirmation agreement. Thus, under § 524(c)(6), the bankruptcy court was required to determine whether the agreement imposed an undue hardship on the debtor and whether making the agreement was in the best interest of the debtor. The court held that Regulation Z left it to the court to determine whether any new disclosures were necessary. The court then held that it would not approve the reaffirmation agreement unless the creditor provided new disclosures. *Kamps,* 217 B.R. at 850. We need not decide whether *Kamps* was correctly decided, because it does not address the question presented here. *Kamps* did not hold that a creditor may be held liable under TILA for obtaining a reaffirmation agreement without new disclosures. To the contrary, *Kamps* expressly acknowledges that Regulation Z exempts reaffirmation agreements from the new-disclosure requirements.

We see no reason to conclude that the TILA exemption for reaffirmation agreements does not apply in the present case simply because we have concluded that the AGF reaffirmation agreement is not enforceable under § 524(c). If new disclosures are not required where the debtor becomes subject to a binding obligation by making a reaffirmation agreement, disclosure should not be required where the debtor does not become subject to a binding obligation.

The bankruptcy court did not err in dismissing Debtor's sixth claim for relief.

---

# CONCLUSION

We reverse the bankruptcy court's determination that the reaffirmation agreement is enforceable. We reverse the dismissal of Debtor's claims for civil contempt and violation of the automatic stay. We affirm the dismissal of Debtor's damage claim under § 524 and Debtor's state-law and TILA claims. We remand for further proceedings consistent with this decision.