In re Darlene M. BASSETT, Debtor.

**American General Finance, Inc., Appellant,**

v.

**Darlene M. Bassett, Appellee.**

**In re Darlene M. Bassett, Debtor.**

**Darlene M. Bassett, Appellant,**

v.

**American General Finance, Inc., Appellee.**

Nos. 01–35001, 01–35058.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 4, 2001.

Filed April 9, 2002.

Frederick W. Schoepflin, of Keller Rohrback L.L.P., Seattle, WA, argued the cause for Appellee and Cross–Appellant Darlene M. Bassett; Mark A. Griffin and Lynn Lincoln Sarko assisted on the brief.

Alan D. Smith of Perkins Coie L.L.P., Seattle, WA, argued the cause for Appellant and Cross–Appellee American General Finance, Inc.; Frederick B. Rivera and Adriana Rodriguez assisted on the brief.

Before: KOZINSKI, RYMER and SILVERMAN, Circuit Judges.

KOZINSKI, Circuit Judge.

Darlene Bassett bought two chairs and two ottomans, and financed the purchase with a secured loan from American General Finance, Inc. (Finance). Months later, Bassett filed a voluntary Chapter 7 bankruptcy petition. Before receiving a discharge, Bassett signed a reaffirmation agreement with Finance. Bassett kept up with her payments to Finance for a few months but eventually stopped. Finance sent a series of letters, first friendly and later pointed, asking to be paid. Bassett responded by moving to reopen her bankruptcy so that she could bring this putative class action lawsuit. Bassett argues that the reaffirmation agreement she signed is unenforceable and that Finance's collection letters were therefore illegal. Under a number of theories, she seeks damages and a declaration that the reaffirmation agreement is unenforceable.

The bankruptcy court concluded that the agreement is enforceable and granted Finance's motion for judgment on the pleadings. The Bankruptcy Appellate Panel reversed, concluding that the reaffirmation agreement is not enforceable and that Finance's attempted collection of the debt violated Bassett's discharge. The BAP remanded so that Bassett could proceed with claims for civil contempt and violation of the automatic bankruptcy stay. *See Bassett v. Am. Gen. Fin., Inc. (In re Bassett)*, 255 B.R. 747, 760 (B.A.P. 9th Cir.2000). Finance appeals and Bassett cross-appeals the BAP's affirmance of the dismissal of a implied cause of action under 11 U.S.C. § 524, and of her state law and Truth in Lending Act claims.

1. Bassett argues that the reaffirmation agreement is unenforceable because it fails to comply with 11 U.S.C. § 524(c)(2)(A), which requires the agreement to have a "clear and conspicuous" statement that "advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court." 11 U.S.C. § 524(c)(2)(A). Bassett does not dispute that the agreement contains this "right-to-rescind" statement; she argues that the statement is not "clear and conspicuous."

The bankruptcy code doesn't define "clear and conspicuous." Other courts considering this question have defined the term by borrowing the state law definition of "conspicuous" found in section 1–201(10) of the Uniform Commercial Code. *See, e.g., In re Noble*, 182 B.R. 854, 858(Bankr.W.D.Wash.1995); *In re Roberts*, 154 B.R. 967, 969–70 (Bankr.D.Neb.1993). We see no reason to depart. When a federal statute leaves terms undefined or otherwise has a "gap," we often borrow from state law in creating a federal common law rule. *See PM Group Life Ins. Co. v. W. Growers Assurance Trust*, 953 F.2d 543, 546 (9th Cir.1992); *De Sylva v. Ballentine*, 351 U.S. 570, 580–81, 76 S.Ct. 974, 100 L.Ed. 1415 (1956) (borrowing a state law definition of "children" for purposes of the Copyright Act). The UCC's definition of "conspicuous" is an obvious choice, because it, like section 524(c)(2), is concerned with making contract language

readily accessible to unsophisticated parties.

Hence,

[a] term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: Non Negotiable Bill of Lading) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. But in a telegram any stated term is "conspicuous". Whether a term or clause is "conspicuous" or not is for decision by the court.

U.C.C. § 1–201(10), 1 U.L.A. 64 (1977).

The BAP also borrowed the UCC's definition of "conspicuous," but looked to caselaw from the District of South Carolina to interpret it. *See Bassett*, 255 B.R. at 751–52 (citing *Myrtle Beach Pipeline Corp. v. Emerson Elec. Co.*, 843 F.Supp. 1027, 1038 (D.S.C.1993)). It needn't have reached quite so far. Interpreting Nevada's version of the UCC, we held that a term is conspicuous if "a reasonable person in the buyer's position would not have been surprised to find the [term] in the contract." *Sierra Diesel Injection Serv., Inc. v. Burroughs Corp.*, 890 F.2d 108, 114 (9th Cir. 1989).

■ We decide conspicuousness as a matter of law. This is not because judges are experts at graphic design, but because subjecting conspicuousness to fact-finding would introduce too much uncertainty into the drafting process. *See Smith v. Check–n–Go of Illinois, Inc.*, 200 F.3d 511, 515(7th Cir.1999) ("No matter *what* a lender did, a borrower could say that to his eyes the combination of color, typeface, spacing, size, style, underlining, capitalization, border, and placement ... emphasized one disclosure over another."); U.C.C. § 1–201(10).

■ Bassett's reaffirmation agreement is two pages long. Roughly three-fourths of the top of the first page contains instructions and spaces for such information as Bassett's name and the loan's principal amount and interest rate. Much of this is white space. Just three sentences appear below these blanks:

The parties understand that this agreement is purely voluntary and that the debtor may rescind the agreement at any time prior to discharge or within 60 days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the creditor. Rescission of the Reaffirmation Agreement shall be considered default under the terms and conditions of the Installment Agreement referred to above.

THE DEBTOR UNDERSTANDS THAT THIS AGREEMENT IS NOT REQUIRED UNDER THE UNITED STATES BANKRUPTCY CODE TITLE 11 U.S.C. AND NOT REQUIRED UNDER NON BANKRUPTCY LAW OR ANY AGREEMENT NOT IN ACCORDANCE WITH THE PROVISION OF 11 U.S.C. SECTION 524(C).

The signature line appears just below, as the very last item in the agreement proper.

The second page of the reaffirmation agreement contains a space for the attorney's declaration required by 11 U.S.C. § 524(c)(3), the motion for court approval and the court order. The attorney declaration affirms that the debtor is fully advised of the agreement's consequences, and that the agreement does not impose an undue burden on the debtor.

The BAP held that Finance's right-to-rescind statement is not "conspicuous" because it is in lower case, and near a sentence that is in capitals. This, the panel

concluded, "has the effect of deemphasizing the right-to-rescind language." *Bassett*, 255 B.R. at 752. Additionally, the BAP found that the right-to-rescind statement is "rendered visually less prominent" because it is next to a sentence stating that the rescission constitutes a default. *Id.* The BAP insisted that it was not making a hard-and-fast rule about whether section 524(c)(2) requires any particular formatting; instead, "[o]n this particular form, the combined effect of printing the right-to-rescind language in lower-case type, of including unnecessary language in the same paragraph, and of printing nearby language in upper-case type renders the present reaffirmation agreement unenforceable." *Id.*

None of these factors justify holding that the right-to-rescind statement is not clear and conspicuous. Including "unnecessary language" in the same paragraph as the right-to-rescind statement has only a minor impact. The "unnecessary language" the BAP identifies is a single sentence that takes up about two lines of text. While it's possible that the statement would be marginally more visible with an entire paragraph to itself, the encroachment of a few extra words hardly matters.

The BAP was troubled that the right-to-rescind statement is in lower case, but there is nothing magical about capitals. True, the UCC specifies that "[a] printed *heading* in capitals" is normally conspicuous. U.C.C. § 1 201(10)(emphasis added). This has given rise to the canard that all language in capitals is automatically conspicuous, and the fallacy that language not in capitals isn't conspicuous. One leading sales law treatise goes farther and advises readers to use "bold-face capitals of a contrasting color" to be conspicuous. 1 James J. White & Robert S. Summers, *Uniform Commercial Code* § 12–5 at 637 (4th ed.1995). The use of capitals as a talisman

of conspicuousness has survived intact despite decades of improved literacy and technology. Even some web page "click-through" agreements have clauses written in capitals, though there are better ways of making text stand out in a web browser window. *See, e.g., Specht v. Netscape Communications Corp.,* 150 F.Supp.2d 585, 588–89 (S.D.N.Y.2001).

 Lawyers who think their caps lock keys are instant "make conspicuous" buttons are deluded. In determining whether a term is conspicuous, we look at more than formatting. A term that appears in capitals can still be inconspicuous if it is hidden on the back of a contract in small type. *See, e.g., Sierra Diesel,* 890 F.2d at 114. Terms that are in capitals but also appear in hard-to-read type may flunk the conspicuousness test. *See, e.g., id.; Lupa v. Jock's,* 131 Misc.2d 536, 500 N.Y.S.2d 962, 965 (N.Y.City Ct.1986). A sentence in capitals, buried deep within a long paragraph in capitals will probably not be deemed conspicuous. Formatting does matter, but conspicuousness ultimately turns on the likelihood that a reasonable person would actually see a term in an agreement. Thus, it is entirely possible for text to be conspicuous without being in capitals.

The BAP suggested that the right-to-rescind statement is inconspicuous because a nearby sentence in capitals "deemphasiz[es]" it. Formatting does have the potential to distract: A bold, red, 24–point gothic-font sentence etched holographically onto a page might steal the spotlight from neighboring sentences. Some purists insist that using emphasis "as a guarantee that some portion of what one has written is really worth attending to is a miserable confession that the rest is negligible." H.W. Fowler, *A Dictionary of Modern English Usage* 305–06 (Crown Publishers 1983). But this problem arises only when

formatting highlights a sentence by making it stand out from a surrounding sea of text. When an agreement is three sentences long, this isn't an issue.

Finance's reaffirmation agreement demonstrates the shortcomings of any conspicuousness test that turns on contrasting formatting. Section 524 requires two "clear and conspicuous" statements. Aside from the right-to-rescind statement, the agreement must also have a "clear and conspicuous" notification to the debtor that the law does not require him to enter into a rescission agreement. *See* 11 U.S.C. § 524(c)(2)(B). Finance's form puts this notification in capitals. If Finance had also put the right-to-rescind statement in capitals, that would have left a single sentence in lower case. Normally, statements in capitals stand out; but if every sentence *except* one is in capitals, then only that (supposedly inconspicuous) sentence contrasts with the others. Of course, had Finance deleted that odd lower-case sentence, the entire agreement would have been in capitals.

Brevity promotes conspicuousness. Bassett's rescission agreement takes up significantly less than one side of a page. The right-to-rescind statement is the first sentence in the agreement, making it even more conspicuous—even the least attentive reader is likely to see it. No aspect of the formatting or appearance of the statement makes it less visible or difficult to read. A reasonable person "would not have been surprised to find" the agreement's right-to-rescind statement. *Sierra Diesel,* 890 F.2d at 114.

■ 2. Bassett also argues that the reaffirmation agreement is unenforceable because it contains a misleading (and hence not "clear") statement. Bassett faults the agreement's second sentence: "Rescission of the Reaffirmation Agreement shall be considered default under the terms and conditions of the Installment Agreement referred to above."

While this sentence is not strictly accurate in all cases—rescission would only lead to a default if the debtor was in default at the time of bankruptcy—it accurately described the consequences Bassett faced, because she was in default when she applied for bankruptcy. Even if she hadn't been, Bassett was not forced to rely solely on the agreement's statement of the law: The attorney declaration accompanying the reaffirmation agreement states that the attorney had "fully advised the debtor . . . of the legal effect and consequences of default under [the reaffirmation] agreement." Because she received this independent legal advice, she cannot argue that the reaffirmation agreement is misleading.

3. We conclude that the right-to-rescind statement is clear and conspicuous as required by 11 U.S.C. § 524, and that Bassett's reaffirmation agreement is therefore enforceable. Bassett's claims for violation of the post-discharge injunction, civil contempt, violation of the Washington Consumer Protection Act, unjust enrichment, and violation of the Truth in Lending Act all require a finding that the reaffirmation agreement is unenforceable. Thus, they all fail.

4. Bassett also seeks relief under 11 U.S.C. § 362(h) for willful violations of the automatic bankruptcy stay. According to Bassett's complaint, Finance "made regular and repeated telephone calls to Ms. Bassett's home during the pendency of Ms. Basset's [sic] bankruptcy proceedings to demand repayment of its loans." Compl. at ¶ 23.

Bassett did not file a claim for violation of the stay while her case was pending in bankruptcy court. Instead, she moved to reopen her bankruptcy so that she could

file a class action complaint for violation of the post discharge order. Her motion to reopen did not mention any plans to file a claim for willful violation of the automatic stay, and the order reopening her case did not reopen it for that purpose.

The bankruptcy court's order granting Finance's motion for judgment on the pleadings does not explain why the bankruptcy court dismissed Bassett's claim for willful violations of the automatic bankruptcy stay. It is possible that the dismissal was based on the fact that the issue was not properly before the court, not having been within the scope of the bankruptcy court's order reopening the proceedings. *See Donaldson v. Bernstein,* 104 F.3d 547, 553 (3d Cir.1997). If so, the bankruptcy court would have been well within its discretion. However, because the bankruptcy court did not explain the basis of its order, we are unable to determine how, or by what standard, to review that dismissal.

It does seem clear that Bassett did not seek, and the bankruptcy court did not grant, reopening as to this claim. This may impact either the bankruptcy court's discretion on reopening, or its jurisdiction to proceed, or both. We leave these matters for the bankruptcy court's consideration on remand.

 \* \* \* \* \* \*

We reverse the BAP's determination that the reaffirmation agreement is unenforceable; reverse the BAP's reversal of the dismissal of Bassett's claims for civil contempt; affirm the BAP's reversal of the dismissal of Bassett's claim for violation of the automatic stay; and affirm the BAP's affirmance of the dismissal of Bassett's damage claim under section 524, Bassett's state law claims, and Bassett's Truth in Lending Act claims. Costs for the appeal will be taxed against Bassett, and costs for the cross-appeal will be taxed against Finance.

**AFFIRMED in part; REVERSED in part; REMANDED.**